1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARCTIC SEA MINING LLC, an Alaska limited liability company, | No.: |
| *Plaintiff,* | **COMPLAINT FOR DAMAGES** |
| v. | **JURY DEMAND** |
| ATLANTIC SPECIALTY INSURANCE COMPANY, a Foreign corporation; ENDURANCE AMERICAN INSURANCE COMPANY, a Foreign corporation; SUNDERLAND MARINE MUTUAL INSURANCE COMPANY, LTD., a Foreign corporation; and UNITED STATES FIRE INSURANCE COMPANY, a Foreign corporation, | |
| *Defendants.* | |

    Plaintiff ARCTIC SEA MINING LLC ("ASM" or "plaintiff"), by and through its counsel

of record, alleges as follows:

### INTRODUCTION

    1.  This lawsuit arises from the defendants' denial of insurance coverage, on a policy of

marine insurance, for damages to the plaintiff's vessel, the MYRTLE IRENE, a *walking spud*

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

1

*barge*.  Plaintiff herein brings the following cause of action: (1) breach of insurance contract based on defendants' wrongful denial of coverage.

## PARTIES

2.   Plaintiff, ASM, is an Alaska limited liability company with its principal place of business in Nome, Alaska.  Plaintiff is a gold-mining company that owns and operates the vessel MYRTLE IRENE, a *walking spud barge*, employed for the purpose of dredging for gold on the Alaskan shores in or about the waters of Nome, Alaska.

3.   Pursuant to information and belief, defendant Atlantic Specialty Insurance Company ("Atlantic") is a foreign corporation organized under the laws of the State of New York with its principal place of business in Minnetonka, Minnesota.  At all material times herein, Atlantic operated through its managing general agent International Marine Underwriters ("IMU").

4.   Pursuant to information and belief, defendant Endurance American Insurance Company ("Endurance") is a foreign corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

5.   Pursuant to information and belief, defendant Sunderland Marine Mutual Insurance Company, Ltd. ("Sunderland") is a foreign corporation domiciled in and organized under the laws of the United Kingdom.  At all material times herein, Sunderland operated through its managing general agent Harlock Murray Underwriting ("HMU").

6.   Pursuant to information and belief, defendant United States Fire Insurance Company ("US Fire") is a foreign corporation organized under the laws of the State of Delaware, with its principal place of business in Morristown, New Jersey.  At all material times herein, US Fire operated through its managing general agent International Specialty, Inc. ("ISI").

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

2

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

7.   Each of the defendants (hereinafter, collectively the "defendants" and/or "Underwriters") underwrote, bound, and subscribed to the policy of marine insurance that is the subject of this lawsuit.

## JURISDICTION AND VENUE

8.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as an action between citizens of different states involving an amount in controversy in excess of $75,000.00.

9.   This Court also has subject matter jurisdiction pursuant to this Court's Admiralty jurisdiction under 28 U.S.C. § 1333(1).  However, plaintiff elects at this time to proceed at law in diversity with a jury.

10.  This Court has personal jurisdiction over the parties by virtue of the solicitation, negotiation, contracting, issuance, delivery, and endorsement in this Judicial District of the policy of marine insurance at issue in this matter, issued to plaintiff by defendants through plaintiff's insurance broker in this district.

11.  Venue is proper in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1391(b)(2), by virtue of the solicitation, negotiation, contracting, issuance, delivery, and endorsement in this Judicial District of the policy of marine insurance at issue in this matter, issued to plaintiff by defendants through plaintiff's insurance broker in Seattle.

## FACTS

12.  ASM purchased the MYRTLE IRENE in early 2014, for the purpose of employing her as a gold mining dredge in Nome, Alaska, for the 2014 mining season and beyond.  A 2009 survey of the vessel valued her at $3 million dollars.  Immediately after ASM purchased the MYRTLE IRENE, ASM transited her to a shipyard to undergo necessary repair work and

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

3

maintenance.  Subsequent to these repairs, she was surveyed again and valued at $3 million dollars.

13. The MYRTLE IRENE is not an ordinary barge, nor is she a typical spud barge; she is a *walking spud barge*.

**I. Walking Spud Barges**

14. Walking spud barges are distinguishable from typical spud barges.

15. Typical spud barges have two to four "spuds".  Spuds are large cylinder-shaped columns that are designed to stabilize the vessel on the surface of the water.  To do this, the spuds are lowered through holes in the barge (called "spud wells" or "spud pockets"), down into the seafloor.  Depending upon the depth of the water, when fully lowered, the spuds appear partly above the deck, and partly below the deck.  This stabilizes the vessel into an affixed place.  Typical spud barges are most often used for construction work.  For example, once secured, spud barges are ideally used as work platforms for cranes and other heavy machinery.

16. Walking spud barges, on the other hand, have one or more "walking spuds" in addition to having one or more regular "spuds".  The regular spuds on a walking spud barge are called the "working spuds".  Walking spuds are designed to move both horizontally and vertically, whereas the working spuds are only designed to move vertically.  The purpose of the horizontal movement is to allow the vessel to re-position itself without the use of a tug or a propeller.  This horizontal movement is achieved by the design of the walking spud pocket, which is a rectangle-shaped cutout in the hull of the vessel.  Inside the cutout is a trolley that runs along a track system affixed to the hull.  Trolleys are rectangle in shape, and are designed to fit snugly inside the rectangle-shaped cutout in the hull of the vessel.  The walking spud fits in, and goes through, a hole in the trolley.  Typically, the trolley is operated by a hydraulic ram that extends from the static part of the hull to the trolley itself.  The walking spuds and

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

4

the trolley allow the barge to "walk" on the seafloor.  The walking process can be described as follows:

  i. With the barge beginning with all the spuds moored to the sea floor, the bow walking spud is first raised from the sea floor, the trolley then moves forward to the front of the spud pocket, the walking spud is then lowered back down to the sea floor, the working spuds are then raised, and the trolley then moves back toward the stern of the vessel, causing the vessel to be pulled forward by approximately 4 to 18 feet in the water (depending on the length of the spud pocket) before it is re-positioned and affixed to continue its work.

When observed in action, the vessel looks like it is inching forward in slow motion.

**II. The MYRTLE IRENE**

17. The MYRTLE IRENE is a *walking spud barge*.  She is 120 feet long, and 45 feet wide. She weighs 317 tons.

18. The MYRTLE IRENE has three spuds: one walking spud at the bow (the front) and two working spuds at the stern (the back).  Each spud is 70 feet in height, and 42 inches in diameter.  The MYRTLE IRENE's walking spud is placed inside her trolley that is affixed on rails inside her bow spud pocket.  The trolley fits snug into the bow spud pocket so that it is stabilized as part of, and with, the whole of the vessel.  The MYRTLE IRENE's trolley extends both partly above the deck and partly below the deck, similar to the spuds themselves.  The trolley is moved back and forth by a hydraulic ram that connects the trolley to the static portion of the MYRTLE IRENE's hull.  The hydraulic ram is located entirely below the deck of the barge.  The MYRTLE IRENE's working spuds are located inside their respective stern spud pockets, which are reinforced by steel welding.  The spuds, the spud pockets, the trolley, and the hydraulic ram are collectively hereinafter referred to as the MYRTLE IRENE's "Spud Elements".

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

5

19. On the MYRTLE IRENE's deck, there are: winches, a generator, a crane, and an excavator (hereinafter, collectively, her "Machinery").

20. All of the Spud Elements, and the Machinery were either on or were part of the MYRTLE IRENE when she was surveyed in 2009 and in 2014.  Each survey appraised her, as a whole vessel, inclusive of the static portion of her hull, the Spud Elements and the Machinery, at a total value of $3 million dollars.

**III.  The Insurance Policy**

21. ASM engaged the Seattle-based marine insurance brokerage firm MCM Insurance Services, LLC ("MCM") in March of 2014, to obtain necessary insurance for ASM and the MYRTLE IRENE.  MCM began negotiating with the Underwriters, through their representative lead underwriting agent, IMU.

22. MCM thereafter issued the marine insurance policy #MCM-14-028-HP (the "Policy") to ASM on March 17, 2014.  The Policy was underwritten and subscribed to by the Underwriters, in equal 25% proportions, on the following premises:

    i.    The Policy consists of a "Hull & Machinery" form, and a "Protection & Indemnity" form, in addition to a number of endorsements and conditions cited within the Policy.  At issue in this matter is the Hull & Machinery form, and one condition: the Limited Machinery Coverage condition.

    ii.    The parties negotiated the Limited Machinery Coverage condition (the "Excluding Condition"), attached hereto as Exhibit 1.  The Excluding Condition reads as follows:

> Limited Machinery Coverage – it is agreed that coverage under the Hull & Machinery form attached to and forming part of this policy shall exclude any claim for loss, damage or expense to any engine or other propulsion or electrical generating machinery, crane, excavator or any other deck machinery included with the hull unless such loss, damage or

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

6

1
                   expense is directly caused by fire, collision with another
                   vessel or sinking resulting from a peril insured against.

iii.    The sum insured under the Hull & Machinery coverage is $3,000,000.00, which is MYRTLE IRENE's "insured value".  Underwriters derived this rate from the 2009 survey report, which valued the MYRTLE IRENE at $3,000,000.00. Underwriters required $93,000 in premium from ASM, as payment for the Hull & Machinery coverage alone, which was based off a "Hull Rate" of 3.10%. Underwriters charged ASM $110,500.00 in total premium for the Policy, which ASM paid in full.

**IV. The Claim**

23. On September 22, 2014, a storm swept through the waters off the shores of Nome, Alaska, where the MYRTLE IRENE was engaged in gold dredging operations.  The storm lasted for two days.  At the inception of the storm, the crew of the MYRTLE IRENE attempted to retract her spuds and have her and her crew towed to safety.  During the retraction, one of the spud cables snapped, causing the MYRTLE IRENE to be stuck in place, with one of her spuds lodged into the seabed.  ASM immediately notified its insurance broker of the potential claim and received instructions to begin mitigating damages.  ASM then hired a salvage team to un-lodge the vessel.  The salvage team ultimately had to cut two of the spuds to free the MYRTLE IRENE from the grip of the ocean floor.  The salvage team successfully saved the vessel from total ruin, but not before the storm caused significant damage to the MYRTLE IRENE.

24. ASM first notified defendants of the claim on September 23, 2014.  Defendants hired their own marine surveyor, Richard Blomquist, to assess the damage.  Mr. Blomquist performed the survey while the MYRTLE IRENE was still in the water in Nome, and issued his survey report on October 10, 2014.  Mr. Blomquist noted the following items of damage: (a) damage to the spud pockets, (b) possible hull damage with a minor fuel leak and possible

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

7

water in the fuel, (c) damage to the winches, (d) damage to the walking spud traveler

(otherwise referred to in this complaint as the "trolley"), (e) replacement of two spuds, and (f)

possible damage to the "walking" spud.  The survey also makes note of the following:

"necessary drydocking", "necessary laydays", "necessary environmental protection and

services fees", "necessary weather protection", "necessary crane services", "necessary

recoating of all damage affected surfaces".  Lastly, the report provides that the "listed

damages are as evident from a visual inspection only".

25. Two preliminary repair estimates, to repair the MYRTLE IRENE, were obtained.

26. The first repair estimate came from Derek Mining Company, and totaled

$2,578,150.00.  Derek Mining Company is small welding company in Nome.  It is not a

shipyard.    Underwriters received the Derek Mining estimate on October 13, 2014.

27. The second repair estimate came from Vigor Shipyard in Seward, Alaska, and totaled

$2,644,232.00.  The Vigor Shipyard estimate was provided to Underwriters on December 15,

2014.

28. Neither of the repair estimates cover the full scope of the cost of repairs to restore the

MYRTLE IRENE to a seaworthy vessel.

29. The actual total cost of the *covered* repairs are expected to well-exceed $3,000,000.00.

30. ASM submitted a formal notice for the Constructive Total Loss ("CTL") and

abandonment of the MYRTLE IRENE to the defendants on October 24, 2014.  ASM tendered

its CTL and abandonment claim, based upon, but not limited to, the following factors: (1) the

preliminary repair estimates, (2) plaintiff's knowledge of the additional costs required to

repair a vessel like the MYRTLE IRENE in a remote region such as Nome, Alaska, (3) the

additional hull repair work identified by Vigor Shipyard and touched upon by the

Underwriters' surveyor Mr. Blomquist, (4) the additional cost to transit the MYRTLE IRENE

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

from Nome to Vigor's shipyard in Seward, and (5) the general business knowledge that actual repair costs regularly exceed vendor estimates.

31. On December 5, 2014, defendants formally denied ASM's CTL and abandonment claim.  In addition, Underwriters denied covering the costs of repairing the MYRTLE IRENE, except for the following: (1) the cost of repairing the two stern spud wells; and (2) 50% of the cost for: (a) necessary painting, (b) work environment, and (c) the crane rental.  Underwriters denied the remainder of the repair costs, based exclusively on the wording in the Limited Machinery Coverage condition as the basis for their denial.  Specifically, Underwriters cited the "any other deck machinery" line within the exclusionary clause as the sole basis for denying ASM's claims.  In other words, Underwriters' contention is that all damage line items that they refused to cover are "any other deck machinery" within the Policy.

32. Plaintiff formally protested Underwriters' denial of coverage on February 13, 2015, in a letter sent to each of the Underwriters.

33. Underwriters responded to plaintiff's demand in writing on February 19, 2015.  In that letter, Underwriters admitted to an error in their coverage determination; and acknowledged that the spud columns are, in fact, *not excluded* from coverage under the Policy.  Defendants thereby agreed to cover the cost of replacing two of the three spud columns.  In other words, the spud columns themselves are not "any other deck machinery" under the Policy.  To date, defendants have made no further coverage concessions.

34. Plaintiff contends that the MYRTLE IRENE is a CTL and is entitled to abandon her pursuant to the Policy, or in the alternative, that far more coverage is afforded under the Policy than defendants have admitted to.

## CLAIMS FOR RELIEF

### I. Breach of Contract.

35. Plaintiff incorporates the allegations in paragraphs 1 – 34, above.

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

1    36. Underwriters' denial of coverage for the physical loss or damage to the MYRTLE

2  IRENE, and other expenses due under the Policy, constitutes a breach of contract for which

3  defendants are liable in their respective subscription percentages and in an amount to be

4  proven at trial.

5    37. Underwriters' denial of coverage for the loss or damage to the MYRTLE IRENE is

6  covered by the Policy and thereby creates liability for all of plaintiff's attorney fees and costs

7  under *Olympic Steamship v. Centennial Insurance*, 117 Wash.2d 37, 811 P.2d 673 (1991).

8               **PRAYER FOR RELIEF**

9    Plaintiff prays for judgment against defendants as follows:

10    1.  Award of damages for the wrongful denial of coverage for all amounts owed to the

11  plaintiff under the Policy;

12    2.  Award of prejudgment interest;

13    3.  Award of plaintiff's reasonable attorney fees and costs; and

14    4.  Such other and further relief this Court deems just and equitable.

16  Dated this 10th day of April, 2015.

18               Respectfully Submitted,

19               PIPINICH LAW, PLLC

20                /s/ Joseph B. Pipinich

21               Joseph B. Pipinich, WSBA #44238
                  2292 W. Commodore Way, Suite 210

22               Seattle, WA 98199
                  (206) 588-2880

23               jp@pipinichlaw.com

24               ATTORNEY FOR PLAINTIFF

25

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

**CERTIFICATE OF SERVICE**

I certify that on April 10, 2015, I electronically filed a copy of the foregoing

COMPLAINT FOR DAMAGES through the Court's CM/ECF system on this Honorable Court.


Signed and dated at Seattle, Washington on this 10th day of April, 2015.


   /s/ Louisa M. Florio

Louisa M. Florio, Paralegal
PIPINICH LAW, PLLC
2292 W. Commodore Way, Suite 210
Seattle, WA 98199
(206) 588-2880

COMPLAINT FOR DAMAGES
*Arctic Sea Mining LLC v. Atlantic Specialty Insurance Company, et al.*
Case No.:

PIPINICH LAW, PLLC
2292 W. Commodore Way #210
Seattle, WA 98199
(206) 588-2880

11